# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|                        |     |                          |
|------------------------|-----|--------------------------|
| STATE OF DELAWARE,     | )   |                          |
|                        | )   |                          |
| v.                     | )   | ID Nos. 2004000621A & B  |
|                        | )   |                          |
| ANDRE DAVIS,           | )   |                          |
|                        | )   |                          |
| Defendant.             | )   |                          |

## MEMORANDUM OPINION

Date Submitted:  February 29, 2024
Date Decided:  April 18, 2024

*Upon Consideration of Defendant's Motion for Postconviction Relief,*
**DENIED**

*Upon Consideration of Rule 61 Counsel's Motion to Withdraw,*
**GRANTED**

Jeffrey M. Rigby, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware.  Attorney for the State.

Patrick J. Collins, Esquire, Collins Price & Warner, Wilmington, Delaware. Postconviction Counsel for Defendant Andre Davis.

**JURDEN, P.J.**

# I. INTRODUCTION

A jury found Andre Davis ("Davis") guilty of Assault First Degree, Possession of a Firearm During the Commission of a Felony ("PFDCF"), Robbery First Degree, Possession of a Firearm by a Person Prohibited ("PFBPP"), and Possession of Ammunition by a Person Prohibited ("PABPP").[1] Davis now moves for Postconviction Relief pursuant to Superior Court Criminal Rule 61 ("Rule 61 Motion").[2] This Memorandum Opinion addresses Davis' Rule 61 Motion and Rule 61 Counsel's Motion to Withdraw ("Motion to Withdraw").[3] For the reasons set forth below, Davis' Rule 61 Motion is **DENIED** and Rule 61 Counsel's Motion to Withdraw is **GRANTED**.

---

[1] D.I. 33A, D.I. 5B.
[2] D.I. 59A, D.I. 25B (hereinafter "Rule 61 Mot.").
[3] D.I. 71A, D.I. 37B (hereinafter "Mem. in Supp. of Mot. to Withdraw").

## II. BACKGROUND AND PROCEDURAL HISTORY

A. <u>Statement of Facts</u>[4]

On the evening of April 4, 2020, Robert Tackett ("Tackett") and Davis (also known as "Dre")[5] were recording music in Tackett's home studio, located on the second floor of 2 West 27th Street (the "Residence").[6] At some point, Tackett told Davis that some of Davis' work was unusable and that Davis would need to re-record it.[7] Davis disagreed and told Tackett that he liked the tracks as they were and wanted to move onto the next track.[8] When Tackett turned around to prepare the equipment for the next track, Davis pulled out a firearm and fired five or six shots at Tackett.[9] Davis shot Tackett in the chest, and both of his hands.[10] After being shot, Tackett stood up and uttered "[t]hank you, Jesus, I'm still alive,"[11] and tried to call 911 on his cellphone, but Davis grabbed the cellphone out of Tackett's hand.[12] Although wounded, Tackett walked Davis downstairs and unlocked the front door so that

---

[4] All references to the Appendix in Support of Rule 61 Counsel's Motion to Withdraw are hereinafter referred to as "A___."
[5] A179-A248 (Testimony of Tackett) at A187, A190-A191.
[6] A180, A184-A185.
[7] A194.
[8] A194-A195.
[9] A196.
[10] A269-A299 (Testimony of Amy Stier) at A279-A283.
[11] A197.
[12] A197-A198.

Davis could leave.[13]  Once Davis was outside the Residence,[14] Tackett used his home phone to dial 911.[15]

Tackett's brother, Michael Tackett ("Michael"),[16] who lived with Tackett, heard the gunshots from his bedroom.[17]  At first, he thought the gunshots were coming from outside the Residence,[18] then, he realized the gunshots were coming from inside.[19]  As Michael exited his bedroom he saw Tackett coming up the stairs of the Residence.[20]  Tackett was on the phone with a 911 operator.[21]  Michael observed Tackett bleeding from his chest and heard him tell the 911 operator that he had been shot.[22]  Michael grabbed his car keys so he could take Tackett to the hospital.[23]  As Michael was helping Tackett walk to his car, the police arrived.[24]

Officer Colin Osler ("Officer Osler"), of the Wilmington Police Department ("WPD") responded to Tackett's 911 call.[25]  Upon arrival, he observed Tackett was

---

[13] A203.  Because the front door of the Residence has a key lock on both sides, Tackett had to unlock the door for Davis to leave.  A255-A268 (Testimony of Michael Tackett) at A268.

[14] Davis was still on the front porch when officers first started to arrive at the scene but then ran into 4 West 27th Street.  A235-A236.

[15] A202-A203.

[16] The Court refers to Michael Tackett by his first name to distinguish him from his brother.

[17] A256-A257.

[18] A258.

[19] Id.

[20] A259.

[21] Id.

[22] A260-A261.

[23] A261.

[24] A261-A262.

[25] A152-A175 (Testimony of Officer Colin Osler) at A153-A154.

shirtless and bleeding profusely from his upper body.[26] Officer Osler also observed injuries on Tackett's hands, fingers, and head.[27] Tackett told Officer Osler he had been shot and the person who shot him ran into the neighboring house (4 West 27th Street) and was wearing a leg brace.[28] Officer Osler led Tackett farther down the street and away from 4 West 27th Street.[29] An ambulance arrived and took Tackett to the hospital and Officer Osler followed in his vehicle.[30] Once at the hospital, Tackett received medical treatment for his injuries.[31] In between treatment, Tackett spoke with Officer Osler.[32] Tackett told Officer Osler that earlier that night he had been recording music in his home with a man named "Ray" or "Raymond."[33] While they were recording music there was a disagreement and the man shot Tackett and took his Cricket 422 cell phone.[34] Tackett provided a brief description of the shooter to Officer Osler stating, "a black male possibly in his twenties with a short haircut wearing a red hooded sweatshirt and blue jeans and a black leg brace on his left

---

[26] A155.
[27] A157.
[28] A156.
[29] A168.
[30] A159-A160.
[31] *Id.*
[32] *Id.*
[33] A160. Tackett later told Officer Osler that the reason he first referred to the shooter as "Ray"/ "Raymond" was because he had previously heard the suspect's girlfriend refer to him by those names. A161. Tackett explained at trial that at the time of his interview with Officer Osler he was still in shock from being shot and partially incoherent, and that he had always referred to Davis as "Dre" in the past. A224-A225, A238-A239.
[34] A160.

leg."[35]  While still at the hospital, Tackett identified Davis as the shooter from a photo array shown to him by Detective Matthew Geiser ("Detective Geiser"), the Chief Investigating Officer.[36]

Back at the scene of the shooting, Detective Matthew Rosaio ("Detective Rosaio") responded to a dispatch call stating a shooting had occurred inside of the Residence and the suspect had entered 4 West 27th Street.[37]  When Detective Rosaio arrived, he ordered the occupants of 4 West 27th Street to exit.[38]  A woman, the woman's brother Roland, and Davis exited the home.[39]  Detective Rosaio directed Davis to Officer Daniel Shea ("Officer Shea"), another reporting officer, and Officer Shea detained Davis.[40]  Officer Shea conducted a search of Davis' person and found a cellphone in Davis' pocket which Davis claimed was his.[41]  Officer Shea noticed some blood on the cellphone while he was transporting Davis to the police station.[42]  Once Officer Shea arrived at the police station, Davis was placed in a holding room and Officer Shea placed the cellphone into an evidence bag and gave it to Detective

---

[35] *Id.*
[36] A219-A220; A371-A393 (Testimony of Detective Matthew Geiser) at A376-A377.
[37] A300-A312 (Testimony of Lieutenant Matthew Rosaio) at A301-A302.
[38] A304-A305.
[39] A305-A307.
[40] A306-A307.  The Arrest Warrant for Davis contains some errors as to the date and time of the incident; however, those errors were clarified and corrected at Davis' preliminary hearing. *See* Mem. in Supp. of Mot. to Withdraw at 1 n.1.
[41] A322-A329 (Testimony of Officer Daniel Shea) at A324-A326.  Officer Shea testified at trial that searching a person before placing them inside an officer's vehicle is standard safety procedure. A324.
[42] A323-A325.

Geiser.[43]

While Davis was in custody, officers proceeded to search 4 West 27th Street. During the search, Corporal James Houck ("Corporal Houck"), an evidence detective,[44] photographed both the Residence and 4 West 27th Street.[45] While photographing 4 West 27th Street, Corporal Houck found a handgun in the hallway about 15 feet from the front door.[46] Upon closer inspection, Corporal Houck noticed it was a five-shot revolver containing five spent cartridges.[47]

B. Procedural History Leading Up to Trial

On July 27, 2020, Davis was indicted for Attempted Murder First Degree, PFDCF, Robbery First Degree, PFBPP, and PABPP.[48] On May 27, 2021, Trial Counsel filed a Motion for a Psychological Evaluation because Davis refused to speak with Trial Counsel about the case.[49] During the psychological evaluation, Davis refused to be an active participant.[50] The evaluator opined that Davis was not suffering from any mental disorder in general or at the time the evaluation was conducted.[51]

---

[43] A327-A328.
[44] A349-A368 (Testimony of Corporal James Houck) at A349.
[45] A354-A356.
[46] A364.
[47] A362.
[48] D.I. 2A.
[49] D.I. 8A; *see* Mem. in Supp. of Mot. to Withdraw at 2.
[50] *See* D.I. 12A.
[51] *See id.*

At his Final Case Review on November 22, 2021, Davis rejected the State's plea offer.[52] The plea offer was to Assault First Degree and PFDCF.[53] Pursuant to the plea offer, the minimum mandatory was 5 years and the State agreed to cap its unsuspended Level V recommendation at 15 years.[54] The Court advised Davis that if he went to trial and was found guilty of all offenses, the minimum mandatory would be 26 years and the maximum would be life.[55] Davis elected to reject the plea offer and go to trial.[56]

On November 30, 2021, the Court held a teleconference in preparation for trial.[57] During the teleconference, the Court granted a verbal motion to sever the Person Prohibited charges from the rest of the charges in the indictment, creating the A and B Cases.[58] The parties did not raise any other pretrial issues during the teleconference.[59]

On December 3, 2021, four days before trial, the State sent an e-mail to the Court, informing the Court that it had recently discovered new evidence as a result of a meeting with Tackett and it intended to introduce this evidence at trial.[60] The

---

[52] *See* A62-A70 (Transcript of Final Case Review) at A62-66.
[53] *See id.*
[54] *Id.*; *see* Mem. in Supp. of Mot. to Withdraw at 3.
[55] A65-66.
[56] D.I. 24A.
[57] D.I. 16A.
[58] *Id.*; A71-A88 (Transcript of Nov. 30, 2021 Teleconference) at A73-A74.
[59] *See generally* A71-A88.
[60] D.I. 17A.

8

evidence was a hat (in Tackett's possession) that had been photographed by WPD at the Residence.[61] The hat was not collected as evidence on the night of the shooting.[62] Tackett told the State that the hat had bullet holes in it and, after he returned home from the hospital he picked up the hat and a bullet fell out of it.[63] Tackett told the State that he still had the hat but the bullet had been lost with the passage of time.[64] Trial Counsel challenged the admissibility of this evidence.[65] On December 6, 2021, the Court held a teleconference to discuss Trial Counsel's opposition to the hat and any mention of the lost bullet.[66] The Court granted Trial Counsel's motion in *limine* and excluded the new evidence.[67]

C. Evidence Presented at Trial

On December 7, 2021, Davis went to trial.[68] The State presented a plethora of evidence against Davis. The jury heard testimony from Detective Geiser;[69]

---

[61] A91-A104 (Transcript of Dec. 6, 2021 Teleconference) at A94-95.
[62] *Id.*
[63] *Id.*
[64] *Id.*
[65] D.I. 18A. Trial Counsel during the teleconference requested the Court exclude the evidence under Superior Court Criminal Rule 16, reasoning that such evidence being introduced less than a week before trial "puts trial preparation kind of in a difficult spot." Trial Counsel emphasized that the bullet had been lost by the victim and the hat was not recovered or turned over to the police until that point. A93-94.
[66] D.I. 19A; *see generally* A91-103.
[67] D.I. 18A; A89.
[68] D.I. 33A.
[69] *See* A371-A393. Detective Geiser testified that the cellphone recovered from Davis' pocket was unlocked using a "pattern" that was provided to him by Tackett, and the cellphone was ultimately identified as belonging to Tackett. A391-A392.

Corporal Houck;[70] Officer Osler,[71] Officer Rosaio,[72] and Officer Shea[73] all of whom responded to the 911 call placed by Tackett. The jury also heard from Tackett, Michael, and a forensic nurse who provided expert testimony that Tackett had sustained life-threatening injuries.[74] The State presented audio from Tackett's 911 call,[75] and surveillance camera footage showing (a) Tackett bleeding while walking out of the Residence[76] and (b) Davis in front of the Residence wearing a black leg brace.[77]

At the close of the State's case-in-chief, the Court conducted a colloquy with Davis during which Davis said he did not want to testify.[78] But, fifteen minutes later, after the jury had been released for the day, Davis changed his mind and told the Court that he *did* want to testify.[79] The Court conducted another colloquy with

---

[70] *See* A349-A368.
[71] *See* A152-A175.
[72] *See* A300-A312.
[73] *See* A322-A329.
[74] *See* A269-A299. Amy Stier is a trained forensic nurse who works for Christiana Care and testified that Tackett had sustained a gunshot wound to his back the night of April 4, 2020. A270, A285-A287. Nurse Stier also testified that the bullet remained in Tackett's chest and that he had also sustained gunshot wounds to both of his hands and a bullet remained lodged in his right thumb. A279-A283. The State also presented the testimony of Officer Elliot Pratts ("Officer Pratts") who helped secure the two houses, and Detective Hugh Stephey ("Detective Stephey") who testified that the firearm recovered was a 3L Magnum revolver and that all 5 bullets had been fired. *See* A313-A321 (Testimony of Officer Pratts), A331-A348 (Testimony of Detective Stephey) at A333-A336.
[75] *See* A198-A199.
[76] *See* A154-A157.
[77] A206-A209 (The video depicted "[t]he brace, the brace on his leg, the hoody that he had on, the jeans, so forth, everything.").
[78] A395-A396.
[79] A404.

Davis, inquiring as to why he changed his mind in such a short period of time.[80] Satisfied after the colloquy that Davis understood he had a constitutional right to testify or not testify and the decision was his to make, the Court informed Davis he would be permitted to testify the next morning before closing arguments.[81] By the next morning, Davis changed his mind again and told the Court he did *not* want to testify.[82] The Court conducted another colloquy,[83] and the parties presented their closing arguments.[84] Prior to reading the jury instructions, at Trial Counsel's request, the Court granted the following lesser-included offense ("LIO") instructions: Assault First Degree for Attempted Murder First Degree, and Theft for Robbery First Degree.[85]

On December 9, 2021, the jury found Davis guilty of Assault First Degree (LIO), PFDCF, and Robbery First Degree in the A Case.[86] The B Case went to trial immediately after and the jury found Davis guilty of PFBPP and PABPP.[87]

### i. Sentencing

On July 1, 2022, the Court sentenced Davis in both cases.[88]

---

[80] A404-A406.
[81] *Id.*
[82] A420.
[83] A420-A421.
[84] *See generally* A428-A466.
[85] A422-A424.
[86] D.I. 33A.
[87] D.I. 5B.
[88] D.I. 44A, D.I. 9B. Level V is consecutive and probation is concurrent. *See* D.I. 44A, D.I. 9B.

In the A Case, the Court sentenced Davis as follows: effective, April 4, 2020, for Assault First Degree (IN20-04-0148), 25 years at Level V suspended after 3 years, for 22 years at Level IV DOC Discretion suspended after 6 months, for 18 months at Level III;[89] for PFDCF (IN20-04-0150), 3 years at Level V;[90] and for Robbery First Degree (IN20-04-0149), 25 years at Level V suspended after 3 years, for 18 months at Level III.[91]

In the B Case, the Court sentenced Davis as follows: effective, April 4, 2020, for PFBPP (IN20-07-1468), 15 years at Level V suspended after 5 years, for 18 months at Level III; and for PABPP (IN20-04-0151), 8 years at Level V suspended for 18 months at Level III.[92]

In total, Davis was sentenced to 14 years of unsuspended Level V time.

D. Postconviction Procedural History

On July 29, 2022, Davis, represented by Appellate Counsel,[93] filed a Notice of Appeal.[94] Appellate Counsel filed a no-merit brief and motion to withdraw pursuant to Supreme Court Rule 26(c).[95] Davis' response to Appellate Counsel's

---

[89] D.I. 44A. The first two years of this sentence are pursuant to a minimum mandatory, and Davis is ordered to pay $1,978.00 in restitution. *Id.*
[90] This is a minimum mandatory sentence. *Id.*
[91] The first two years of this sentence are pursuant to a minimum mandatory. *Id.*
[92] D.I. 9B.
[93] James Turner, Esq. acted as both Trial and Appellate Counsel.
[94] D.I. 42A, D.I. 7B.
[95] Supreme Court Rule 26(c) states, "[i]f the trial attorney, after a conscientious examination of the record and the law, concludes that an appeal is wholly without merit, the attorney may file a motion to withdraw." Supr. Ct. R. 26(c).

brief and motion to withdraw failed to state any meritorious claims, offering instead only conclusory allegations that his right to an impartial jury and judge was violated and that the State violated its evidentiary obligations under *Brady v. Maryland*.[96] On March 23, 2023, the Delaware Supreme Court affirmed the judgment of the Superior Court and noted "that Davis' appeal is wholly without merit and devoid of any arguably appealable issue."[97]

On April 20, 2023, Davis filed the instant *pro se* Rule 61 Motion and a Motion for Appointment of Counsel.[98] The Court granted Davis' Motion for Appointment of Counsel on May 1, 2023,[99] and Patrick Collins, Esq. was appointed as Rule 61 Counsel.[100]

On February 6, 2024, Rule 61 Counsel filed a Motion to Withdraw after determining that Davis had no meritorious postconviction claims.[101] On February 29, 2023, Davis responded to Rule 61 Counsel's Motion to Withdraw.[102]

    i. *Davis' Rule 61 Motion*

Davis asserts four grounds for postconviction relief in his Rule 61 Motion:[103] (1) Trial Counsel was ineffective for failing to provide him with discovery regarding

---

[96] *See Davis v. State*, 295 A.3d 135, 2023 WL 2617380, at *2 (TABLE) (Del. 2023).
[97] *Id.*
[98] D.I. 58A-59A, D.I. 24B-25B.
[99] D.I. 61A, D.I. 27B.
[100] D.I. 64A, D.I. 30B.
[101] D.I. 71A, D.I. 37B.
[102] D.I. 73A, D.I. 39B.
[103] Rule 61 Mot.

his case; (2) Trial Counsel was ineffective for failing "to suppress favorable evidence"; (3) Trial Counsel[104] was ineffective for failing to reserve his "merits" for appeal; and (4) violations of his constitutional rights.[105]

## III. STANDARDS OF REVIEW

### A. Rule 61: Procedural Bars to Relief

Rule 61 governs postconviction relief.[106] Under Rule 61, an incarcerated individual may seek to dismiss his conviction by establishing a lack of jurisdiction, or alternative grounds that sufficiently establish a factual and legal basis for a collateral attack upon the conviction.[107] While "Rule 61 is intended to correct errors in the trial process, [it does] not allow defendants unlimited opportunities to relitigate their convictions."[108] Before considering the merits of any postconviction relief claims, the Court must first consider whether any procedural bars exist.[109]

Rule 61(i) establishes four procedural bars to postconviction relief.[110] Rule 61(i)(1) requires a motion for postconviction relief be filed within one year of a final judgment or conviction.[111] Rule 61(i)(2) bars successive motions for postconviction

---

[104] James Turner, Esq. acted as both Trial and Appellate Counsel.
[105] *See id.*
[106] Super. Ct. Crim. R. 61(a)(1).
[107] *Id.*
[108] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013).
[109] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[110] Super. Ct. Crim. R. 61(i)(1)-(4).
[111] Super. Ct. Crim. R. 61(i)(1).

relief unless certain conditions are met.[112] Pursuant to Rule 61(i)(3) and (4), any ground for relief not previously raised is deemed waived and any claims formerly adjudicated are thereafter barred.[113] There is an exception to the Rule 61(i)(3) procedural bar to relief. A movant may overcome procedural defaults if they show "(A) cause for relief from the procedural default and (B) prejudice from violation of the movant's rights."[114] A "cause" from procedural default can be shown through an ineffective assistance of counsel ("IAC") claim.[115] Since IAC claims cannot be raised at any earlier stage in the proceedings, they are properly presented by way of a motion for postconviction relief.[116]

B. Rule 61: Ineffective Assistance of Counsel

To succeed on an IAC claim, a defendant must satisfy the standard set forth in *Strickland v. Washington*.[117] That is, the defendant must demonstrate that: (1)

---

[112] Rule 61(i)(2) bars successive or subsequent motions for postconviction relief unless the movant is able to "pled with particularity" that (i) "new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted" or (ii) "a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the conviction or death sentence invalid." Super. Ct. Crim. R. 61(d)(2).

[113] This includes proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding. *See* Super. Ct. Crim. R. 61(i)(5), (d)(2)(i), (ii).

[114] Super. Ct. Crim. R. 61(i)(3)A, B.

[115] *Younger*, 580 A.2d at 556.

[116] *Sabb v. State*, 2021 WL 2229631, at *1 (Del. May 28, 2021); *Green v. State*, 238 A.3d 160, 187-188 (Del. 2020); *Whittle v. State*, 2016 WL 2585904, at *3 (Del. Apr. 28, 2016); *State v. Evan-Mayes*, 2016 WL 4502303, at *2 (Del. Super. Aug. 25, 2016).

[117] *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

trial counsel's performance was deficient,[118] and (2) the defendant was prejudiced by the deficiency.[119] To establish prejudice, the defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[120]

Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's conduct fell within a wide range of reasonably professional assistance.[121] Mere allegations of ineffectiveness are not enough.[122] A petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness under prevailing professional norms."[123] Counsel "may not be faulted for reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities."[124] There is a strong presumption that a defense counsel's conduct constituted sound trial strategy,[125] and a defendant must make and substantiate concrete allegations that overcome this presumption.[126] The "[b]enchmark for judging any claim of ineffectiveness must be

---

[118] *Sykes v. State*, 147 A.3d 201, 211 (Del. 2015) (citing *Strickland*, 466 U.S. at 694).
[119] *Strickland*, 466 U.S. at 694.
[120] *Id*. at 694.
[121] *Albury v. State*, 551 A.2d 53, 59 (Del. 1988); *Salih v. State*, 2008 WL 4762323, at *1 (Del. Oct. 31, 2008).
[122] *Younger*, 580 A.2d at 556.
[123] *Strickland*, 466 U.S. at 687-88.
[124] *State v. Finn,* 2012 WL 1980566, at *4 (Del. Super. May 23, 2012) (citing *Harrington v. Richter,* 562 U.S. 86, 102-110 (2011)).
[125] *Strickland*, 466 U.S. at 694.
[126] *See Salih*, 962 A.2d at 257; *see also Albury*, 551 A.2d at 59.

whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[127]

## C. Rule 61: Motion to Withdraw

Pursuant to Superior Court Criminal Rule 61(e)(7), Rule 61 Counsel may move to withdraw if they find the movant's claim to be "so lacking in merit that counsel cannot ethically advocate it, and counsel is not aware of any other substantial ground for relief available to the movant."[128] When evaluating a motion to withdraw, the Court must be satisfied that moving counsel made a conscientious examination of the record and the law for any claims that could arguably support the Rule 61 motion.[129] The Court should also undertake its own review of the relevant claims to determine whether the Rule 61 motion would be devoid of "any, at least, arguable postconviction claims."[130]

## IV. DISCUSSION

## A. Rule 61 Motion

### i. *Ineffective Assistance of Counsel Claims*

This is Davis' first Rule 61 Motion, and it is timely. Davis' asserts the following IAC claims:[131] (1) His Sixth Amendment right to a fair trial was violated

---

[127] *Cooke v. State*, 977 A.2d 803, 840 (Del. 2009) (internal quotations omitted).
[128] Super. Ct. Crim. R. 61(e)(7).
[129] *State v. Coston*, 2017 WL 6054944, at *2 (Del. Super. Dec. 7, 2017).
[130] *Id.*
[131] Davis' IAC claims overcome the procedural bar of Rule 61 (i)(3).

17

because he did not see his discovery and went to trial with only 3 hours of preparation, and Trial Counsel failed to object to the State's witnesses and suppress the cell phone evidence; (2) Trial Counsel failed to file a motion to suppress evidence of the clothes Davis was wearing the night of the shooting since his clothing differed from the clothing described to WPD;[132] and (3) Trial Counsel failed to preserve "his merits for appeal."[133]

To prevail on his IAC claims, Davis must show that Trial Counsel's conduct was objectively unreasonable and, but for Trial Counsel's conduct, the result would have been different.[134] Under *Strickland*, there is no need to examine whether Trial Counsel performed deficiently if the alleged deficiency did not prejudice the defendant.[135] The defendant must make "concrete allegations of actual prejudice and substantiate them or risk summary dismissal."[136] If the defendant is unable to show prejudice, his IAC claim will be denied.[137]

### 1. Ground One: Discovery and the Cellphone Evidence

Davis claims he was "forced" to go to trial with less than 3 hours to prepare,

---

[132] Under this stated ground for relief, Davis also claims that Tackett's phone was with him at Howard R. Young Correctional Institution. Rule 61 Mot.

[133] As noted, James Turner, Esq. acted as both Trial and Appellate Counsel and filed a no-merit brief with the Delaware Supreme Court.

[134] *Strickland*, 466 U.S. at 694.

[135] *Ploof v. State*, 75 A.3d 811, 825 (Del. 2013) ("*Strickland* is a two-pronged test, and there is no need to examine whether an attorney performed deficiently if the deficiency did not prejudice the defendant.").

[136] *Outten v. State*, 720 A.2d 547, 557 (Del. 1998).

[137] *Ploof*, 75 A.3d at 825.

that he was uniformed about the evidence in his case, and that to this day he has not seen any of his discovery.[138] He also claims that Trial Counsel "failed to object to the State witness an[d] suppress the phone and code that played a big part" in his case.[139]

Trial Counsel provided Rule 61 Counsel with his Activity Log for Davis' case. The Activity Log reveals that Trial Counsel conferred on multiple occasions with Davis to prepare him for trial.[140] The following entries in the Activity Log belie Davis' claims that Trial Counsel failed to prepare him and that he never saw any discovery:[141]

- 4/9/2020: video call with client *to discuss case*.

- 5/14/2020: video meeting with client. *Asked client for information on any witnesses or anything he would like investigated*. Client, similar to first meeting, didn't want to say much and said he had no information . . . .

- 7/13/2020: video with client to *discuss case*. Client said he preferred to discuss case in person.

- 9/2/2020: video with client to *discuss case*. Asked client to write me a letter if that would make him feel better discussing details of case. (In person meeting at HRY scheduled for Tuesday 9/8 also.)

- 9/8/2020: *discussed case in person*. Client still very reluctant to talk . . . .

---

[138] Rule 61 Mot.
[139] Rule 61 Mot.
[140] *See generally* A619-A627 (hereinafter "Activity Log").
[141] Emphasis Added.

- 10/23/2020: met with client to *discuss case*. Told him prosecutor is consider[ing] an offer to assault 1st and a weapon but doesnt know the terms yet. Client nodded that he is not taking an offer even when I asked him about a hypothetical 5 year offer. Client still not providing insight on his case.

- 11/11/2020: I *implored client to assist me with case* and he said he would consider it. Told client I don't want to see him get more years just because we were not on same page with *a case that is really strong for the state*. Again he said he would consider it. He also would not sign the [medical] release. And *he would not accept any discovery or a copy of the offer*.

- 12/10/2020: video with client. Conveyed offer again . . . Yet again, I asked client to open up and tell me about the case. *Asked him if this is a self defense case and told him the state's case is very strong*. Not getting much feedback from client.

- 2/21/2021: video with client to *discuss case . . . told client, again, state's case really strong the guy knows him and was just with him in the room at the time, brother saw him, he was shot in shoulder, head grazed, hand[,]told client I needed his help on the facts of this case/defense of this case* and also requested that he sign the release. Client would only nod his head and said he did not want to sign the release. Still very difficult to communicate with him. Client indicated he would prefer to talk in person but he has been difficult to communicate with there too.

- 3/11/2021: video with client. He did not want to answer questions and still did not want to sign consent.

- 3/19/2021: video with client. *Asked the client, again, to please assist with his defense, tell me something . . . Discussed the case, the plea offer, and the need for him to assist with the defense*. Client said he would consider it and agreed that if we do a video in a couple of weeks he may have something to share.

- 5/24/2021: prison visit, client still would not assist with his defense.

- 7/21/2021: prison visit . . . client still not wanting to talk about case only the court date.

- 10/1/2021: laptop visit with client. *Listened to most of alleged victim's audio. Client didn't want to hear anymore.* Also told client about trial date of Dec. 6. Client seemed focused almost exclusively on the trial date and wanting it earlier . . . .

- 11/19/2021: met with client and *listened to and watched remainder of witness statements and discussed case* . . . .

- 11/22/2021: met with client at final cr to *discuss case and offer.* Told client I strongly thought he should take offer. Client rejected offer. Asked him about counteroffers and he gave state and defense agree on 5. Presented it to DAG Rigby who rejected counteroffer.

- 11/29/2021: met with client and *watched video surveillance with him and he looked at the pictures.* . . .

- 12/2/2021: met with client to *discuss the plea and the case* . . . When I asked him about self defense or whether he might testify he didn't answer and eventually said he didn't know. It appears that he does not want to testify.[142]

According to Trial Counsel's Activity Log, Trial Counsel met, either in person or by video call, on eighteen separate occasions prior to trial to discuss the State's case against Davis and any possible defenses.[143] During these meetings, Trial Counsel discussed the State's evidence with Davis, played the victim's statement and the witnesses' statements, played the surveillance camera footage for Davis, and showed

---

[142] *See* Activity Log (emphasis added).

[143] *See generally* Activity Log. The Court notes that the Activity Log also shows Trial Counsel discussed the State's plea offer and plea negotiations during many of the above meetings.

Davis photos of the crime scene taken by police.[144] Trial Counsel implored Davis to assist him by opening up and discussing the case and Davis' possible defenses. Trial Counsel advised Davis on three separate occasions that the State's case was very strong.[145] Despite Trial Counsel's concerted efforts to obtain information from Davis that would help him identify potential witnesses and defenses,[146] Davis provided no information and told Trial Counsel he had none.[147] Trial Counsel found it "difficult to communicate with him."[148] Davis was reluctant to talk about the case with Trial Counsel and did not want to answer questions.[149] Despite Trial Counsel's repeated requests, Davis refused to sign a medical release.[150] Davis' claim that he did not receive discovery until three hours before trial is unsupported.[151] Moreover, when Trial Counsel tried to give Davis discovery on November 11, 2020 (over a

---

[144] *See generally* Activity Log.
[145] Activity Log at 6 ("Nov. 11, 2020: . . . a case that is really strong for the state."); *id.* ("Dec. 10, 2020: . . . told him the state's case is very strong."); *id.* at 2 ("Nov. 29, 2021: . . . state has an extremely strong case.").
[146] *See* Activity Log.
[147] *See id.*
[148] *Id.* at 6 (2/21/2021).
[149] *Id.* at 3 ("7/21/2021 . . . Client still not wanting to talk about case . . . ."); *see id.* at 5, 8 (9/8/2020, 3/11/2021).
[150] *See* Activity Log at 5-6 (11/11/2020, 2/21/2021, 3/11/2021).
[151] *See* Mem. in Supp. of Mot. to Withdraw at 21 (Davis' "claim that he did not receive discovery until three hours before trial cannot be ethically advocated."). To prevail on an IAC claim, a defendant must "substantiate his concrete allegations of actual prejudice or else risk summary dismissal." *Outten*, 720 A.2d at 557 (quoting *Boughner v. State*, 1995 WL 466465, at *1 (Del. Aug. 2, 1995)). Mere allegations of failing to communicate are insufficient to demonstrate that counsel's performance was deficient or prejudicial. *See State v. Perkins*, 2023 WL 7403265, at *13 (Del. Super. Nov. 7, 2023).

year before trial), Davis would not accept it.[152]

Under his first ground for relief, Davis also claims that Trial Counsel was ineffective for not moving to suppress Tackett's cellphone.[153] Officer Shea seized Tackett's cellphone from Davis when he was detained.[154] Davis had no property or possessory interest in Tackett's cellphone. There was no Fourth Amendment violation.[155] Trial Counsel rightfully decided that he had no factual or legal basis to file a motion to suppress Tackett's cellphone. Trial Counsel's performance in this regard was not deficient.

Davis' first ground for postconviction relief is without merit.

### 2. *Ground Two: Evidence Presented at Trial*

Davis next argues that Trial Counsel was ineffective for failing "to suppress my cloth[e]s when the vi[c]tim claim[s] I had on blue jeans and a red shirt when I have video showing I had on green jeans an[d] blue shirt . . . ."[156] The night of the

---

[152] Activity Log at 6 ("[H]e would not accept any discovery or a copy of the offer.").
[153] *See* Rule 61 Mot.
[154] *See* A323-A327.
[155] Mem. in Supp. of Mot. to Withdraw at 21. *See State v. Salasky*, 2013 WL 5487363, at *4 (Del. Super. Sept. 26, 2013) ("[A] proponent of a motion to suppress has standing to contest the legality of a search and seizure only if he can assert either a property or a possessory interest in the areas searched on the property seized and if he can show a legitimate expectation of privacy in the areas searched.") (quoting *Thomas v. State*, 467 A.2d 954, 958 (Del. 1983)).
[156] Rule 61 Mot. Under this stated ground for relief, Davis also claims that somehow Tackett's phone was with him at Howard R. Young Correctional Institution. *Id.* This claim is incredible. The cellphone was collected at the scene of the crime and Officer Shea testified at trial that it was placed into an evidence bag and handed over to Detective Geiser. *See* A327. Further, Detective Geiser testified that he was able to unlock the cellphone using a "pattern" that was provided to him by Tackett. A391-A392.

23

shooting Tackett told Officer Osler at the hospital that the shooter was wearing a red sweatshirt, blue jeans, and a black leg brace on his left leg.[157] In the surveillance footage played for the jury, Davis is seen wearing a black leg brace on his left leg, consistent with Tackett's description of the shooter.[158] In the face of strong evidence against Davis, Trial Counsel's defense strategy focused on highlighting inconsistencies in the witnesses' testimony to sow reasonable doubt and, in closing argument, urging the jury to consider the lesser-included offense of Assault First Degree, rather than Attempted Murder First Degree.[159] In an effort to create

---

[157] A160.

[158] *See id.*

[159] *See generally* A449-A463. Prior to closing arguments, Trial Counsel informed the Court that there had been some disagreement with Trial Counsel and Davis regarding the lesser-included instruction. A422. The Court conducted the following colloquy with Davis:

> THE COURT: All right. So you'd rather go with no lesser-includeds in the hopes that the jury finds you not guilty on these charges?
> THE DEFENDANT: (No verbal response.)
> THE COURT: I need an answer.
> THE DEFENDANT: I don't care.
> THE COURT: You don't care?
> THE DEFENDANT: You can go with it.
> THE COURT: I'm sorry? I can't hear you.
> THE DEFENDANT: You can go with it.
> THE COURT: Okay. Well, I need a yes or no answer because this is a really important decision and it's not one that you can change your mind on once you make it. And you've had time to think about it. We talked about lesser-includeds early on in the case, and now is a decision point. If you do not want me to instruct the jury on lesser-included offenses, you must say so now or else you're waiving that.
> THE DEFENDANT: Yes, you can, ma'am.
> THE COURT: All right.

A423-A424. Trial Counsel's request for a lesser-included instruction of Assault First Degree on the Attempted Murder First Degree saved Davis 13 years of minimum mandatory prison time. *See* Mem. in Supp. of Mot. to Withdraw at 25.

reasonable doubt that Davis was the shooter, Trial Counsel pointed out that the red sweatshirt Tackett said Davis was wearing that night was not recovered by investigators and Davis was not wearing it when he was detained.[160] In light of all the other evidence against Davis, the jury did not find this argument persuasive.[161]

Davis fails to establish prejudice from Trial Counsel's alleged deficiency and his second ground for postconviction relief is without merit.

### 3. Ground Three: Failure to Preserve Merits for Appeal and Meritorious Appellate Claims Not Sufficiently Presented

Davis' third ground for relief alleges that Trial Counsel failed to preserve his merits for appeal and his meritorious appellate claims were not sufficiently presented by Appellate Counsel.[162] But Davis fails to state what those meritorious claims are or how he was prejudiced by Trial and Appellate Counsel's alleged deficiencies.[163]

On appeal, pursuant to Supreme Court Rule 26(c)(iii), Davis had the opportunity to present any points for consideration for his appeal directly to the Delaware Supreme Court.[164] In its decision denying the appeal, the Delaware

---

[160] A458.

[161] The State's evidence against Davis was, as Trial Counsel noted before trial, very strong. The absence of the red sweatshirt did not diminish the strength of the case. *See* Mem. in Supp. of Mot. to Withdraw at 22 ("The jury likely found that the leg brace, Mr. Tackett's phone in Mr. Davis's pocket, and Mr. Tackett's identification of Mr. Davis as his assailant were powerful facts in favor of identification.").

[162] *See* Rule 61 Mot.

[163] *See* Mem. in Supp. of Mot. to Withdraw at 23 ("Davis has failed to articulate how he was prejudiced by any alleged failure of appellate counsel to file the claims Mr. Davis wanted.").

[164] Supr. Ct. C. R. 26(c)(iii) ("The client shall have 30 days in which to review the proposed brief and proposed motion to withdraw and to prepare and submit any points for the Court's consideration . . ..").

Supreme Court noted that although Davis asserted two claims for consideration, he provided no support for his claims.[165]

Rule 61 Counsel states that after a thorough examination of the record there were no colorable appellate claims that Davis could have raised, and "[t]his was a clean trial."[166] "The only evidentiary issue – the late-discovered hat the State sought to admit – was resolved in favor of the defense."[167]

Davis' third ground for postconviction relief is conclusory and unsupported.

### ii. Ground Four: Claims Not Previously Raised

As ground four, Davis argues the following under the category of claims not previously raised:

> [v]iolated my right to a speed trial cause I was told I can use them on a later motion – abuse of discretion – habeas corpus – deprive me of my rights to confront witnesses – suppression of favorable evidence unfulfilled PFBPP agreement – prejudice.[168]

Davis fails to explain his reasons for not previously raising these claims.[169] Pursuant to Rule 61(b)(2), Davis' motion must "specify all the grounds for relief which are available to the movant . . . and shall set forth in summary form the facts supporting each of the grounds thus specified."[170] Davis' fourth ground is a laundry

---

[165] *See* Davis, 2023 WL 2617380, at *2. *See* Mem. in Supp. of Mot. to Withdraw at 24.
[166] *Id.*
[167] *Id.*
[168] Rule 61 Mot.
[169] *See* Rule 61 Mot. at 3.
[170] *See* Super. Ct. Crim. R. 61(b)(2).

26

list of buzzwords with no supporting facts or law. The Court cannot ascertain from this list any colorable issue, and Rule 61(i)(3) states that any claim not previously raised is thereafter barred absent a showing of cause and prejudice.[171] Davis has not alleged any facts that overcome the procedural bar of Rule 61(i)(3).[172] In short, Davis' fourth ground for relief does not state any articulable or meritorious claim for postconviction relief.[173]

For all the reasons explained above, Davis' Rule 61 Motion is **DENIED**.

B. Rule 61 Counsel's Motion to Withdraw

On February 2, 2024, Rule 61 Counsel filed a Motion to Withdraw as Postconviction Counsel pursuant to Superior Court Criminal Rule 61(e)(6) after determining Davis had no meritorious postconviction claims.[174] Rule 61(e)(7) provides that:

> [i]f counsel considers the movant's claim to be so lacking in merit that counsel cannot ethically advocate it, and counsel is not aware of any other substantial ground for relief available to the movant, counsel may move to withdraw. The motion shall explain the factual and legal basis for counsel's opinion and shall give notice that the movant may file a

---

[171] *See* Super. Ct. Crim. R. 61(i)(3); Mem. in Supp. of Mot. to Withdraw at 24.

[172] A movant can overcome a procedural bar to relief by meeting the requirements set forth in Rule 61(i)(5). Davis' conclusory allegations do not meet Rule 61(i)(5)'s pleading requirements and are therefore barred pursuant to Rule 61(i)(3). *See* Super. Ct. Crim. R. 61(i)(5) (reserved for claims that assert the court lacked jurisdiction or claims that satisfy the pleading requirements of Rule 61 (d)(2)(i)-(ii)).

[173] *See* Super. Ct. Crim. R. 61(e)(7). The Court notes that in accordance with Rule 61, Davis was given an opportunity to respond to Rule 61 Counsel's Motion to Withdraw and to provide further points for the Court's consideration. Instead, Davis filed a one sentence answer which states he would like to appeal the Motion to Withdraw. D.I. 73A, D.I. 39B.

[174] *See* Motion to Withdraw along with the accompanying Memorandum in Support of Motion to Withdraw and Appendix. D.I. 71A, D.I. 72A.

response to the motion within 30 days of service of the motion upon the movant.[175]

After undertaking a thorough examination of the record to evaluate Davis' claims, Rule 61 Counsel has determined the claims to be so lacking in merit that he cannot ethically advocate them.[176] Rule 61 Counsel is not aware of any other substantial claims for relief available to Davis, and because he finds no potential meritorious grounds on which to base a Rule 61 motion, he seeks to withdraw as counsel.[177]

The Court is satisfied that Rule 61 Counsel has made a conscientious and thorough examination of the record. Upon *de novo* review of the record, the Court finds that Davis' Rule 61 Motion is devoid of any meritorious postconviction claims. Consequently, Rule 61 Counsel's Motion to Withdraw is **GRANTED**.

## V. CONCLUSION

Davis' Motion for Postconviction Relief is **DENIED** and Rule 61 Counsel's Motion to Withdraw is **GRANTED.**

**IT IS SO ORDERED.**

/s/ Jan R. Jurden
Jan R. Jurden, President Judge

---

[175] Super. Ct. Crim. R. 61(e)(7).
[176] *See* Mem. in Supp. of Mot. to Withdraw at 25-26.
[177] *Id.*

Original to Prothonotary

cc:    Andre Davis, Defendant
       Jeffrey M. Rigby, DAG
       Patrick J. Collins, Esq.